Daniel T. Doria, Pro Se
989 S Main St Ste A PMB 407
Cottonwood, AZ 86326
702-279-5326
danieldoria105@yahoo.com

```
         FILED     ___ LODGED
    ___ RECEIVED   ___ COPY

         SEP 1 0 2025

    CLERK U S DISTRICT COURT
      DISTRICT OF ARIZONA
    BY_____ DEPUTY
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Daniel T. Doria,
Plaintiff,
v.
Spectrum Healthcare Group, Inc.,
Defendant.
Case No.: **CV25-08192-PCT-MTL**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF

(Violations of 42 U.S.C. § 1983; Constitutional and Statutory Violations of SSA Process Rights)

```
THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE   LRCivP 5.4
            (Rule Number/Section)
```

I. INTRODUCTION

\* Plaintiff Daniel T. Doria brings this action against Spectrum Healthcare Group, Inc. (Spectrum) for enforcing internal policies that prevent its licensed medical professionals from participating in federally required Social Security Administration (SSA) disability assessments. This policy obstructs a federally protected process and deprives Plaintiff of his constitutional right to a fair administrative proceeding.

\* Spectrum's refusal to complete functionality reports—which are required under SSA regulations, including 20 C.F.R. § 404.1513, and are relied upon in disability determinations—constitutes an obstruction of a federally protected process. The Supreme Court has long held that an individual's right to Social Security benefits is a statutorily created property interest protected by the Due Process Clause of the Fifth and Fourteenth Amendments. See, e.g., Richardson v. Belcher, 404 U.S. 78, 80-81 (1971).

\* This refusal is particularly harmful given Spectrum's status as a primary behavioral healthcare provider for the Arizona Health Care Cost Containment System (AHCCCS), Arizona's Medicaid program, making it the only affordable or accessible option for many low-income, disabled residents of Northern Arizona. Spectrum's actions create an unlawful barrier to these individuals' ability to access federal benefits.

* Before filing suit, Plaintiff made good-faith efforts to resolve the issue by sending a letter to Spectrum in July 2025, requesting clarification of its policy and offering to open a line of communication. Spectrum never responded, demonstrating a willful disregard for Plaintiff's federally protected rights.

## II. JURISDICTION AND VENUE

* Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(3) because the claims arise under the U.S. Constitution and federal statutes, specifically 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured by the Constitution and laws of the United States.

* Venue is proper in this district under 28 U.S.C. § 1391(b) as the Defendant resides here and the events giving rise to these claims occurred in Yavapai County, Arizona, which is within this judicial district.

## III. PARTIES

* Plaintiff Daniel T. Doria is a resident of Yavapai County, Arizona, receiving treatment through the state's Medicaid (AHCCCS) system, and is a claimant in a pending SSA disability case.

* Defendant Spectrum Healthcare Group, Inc. is an Arizona nonprofit corporation and healthcare provider headquartered in Cottonwood, Arizona. Spectrum contracts with the

Arizona Health Care Cost Containment System (AHCCCS) and is one of the largest providers of behavioral health services in the region.

## IV. FACTUAL ALLEGATIONS

* Plaintiff has long-term, medically documented psychiatric disabilities, including treatment-resistant depression and severe social anxiety disorder, which have rendered him unable to sustain substantial gainful activity.

* As part of his SSA disability claim, Plaintiff's treating clinicians were sent functionality questionnaires used by SSA to assess limitations under 20 C.F.R. § 404.1520a and SSR 96-8p. These regulations establish the SSA's requirement to consider all evidence, including opinions from treating sources.

* These forms were never completed. Plaintiff followed up with Spectrum and was informed by Robert Koehl, a Spectrum representative, that "Spectrum has a policy not to complete SSA forms or functionality reports under any circumstance."

* This refusal was not based on lack of a treating relationship, diagnostic uncertainty, or patient behavior—it was a blanket administrative policy.

* Spectrum's policy effectively prevents low-income patients on AHCCCS from submitting functional evidence required to succeed in a federal benefits process. This creates a discriminatory two-tiered access system that disadvantages the disabled poor and directly conflicts with the foundational principles of the Social Security Act.

* Spectrum exclusively accepts AHCCCS NOW, the Arizona Medicaid plan, and receives substantial public funds while refusing to allow treating clinicians to support patients in accessing federal disability rights under the Social Security Act, 42 U.S.C. § 401 et seq.

* In July 2025, Plaintiff sent a letter to Spectrum Healthcare Group explaining the legal and medical importance of provider participation in SSA evaluations and requesting to speak with leadership to resolve the issue constructively. No response was ever received.

* This silence confirmed that the policy was enforced with finality and without regard for patient rights or federal obligations.

* Plaintiff now faces a December 8, 2025, ALJ hearing without functional medical opinion evidence from his primary provider—not due to a medical judgment but due to an internal administrative gag rule.

V. CLAIMS FOR RELIEF

Count I – Violation of 42 U.S.C. § 1983

(Obstruction of Federally Protected Process)

* Plaintiff incorporates all preceding paragraphs.

* Defendant acted under color of state law by virtue of its AHCCCS contract and Medicaid-funded role as a gatekeeper to mental health care. The Supreme Court has held that a private entity can be considered a state actor if it is performing a public function traditionally and exclusively reserved to the state or if there is a symbiotic relationship

between the state and the private actor. See Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (discussing the public function test) and Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (discussing the symbiotic relationship test). Spectrum's deep contractual relationship with AHCCCS and its role in providing essential public health services satisfy this standard.

* By preventing SSA-mandated forms from being completed, Defendant obstructed Plaintiff's participation in a federal administrative benefits process, violating his civil rights secured by the Social Security Act and the Due Process Clause of the U.S. Constitution. This obstruction constitutes a deprivation of a federally protected right actionable under 42 U.S.C. § 1983.

Count II – Violation of Procedural Due Process
(Fifth and Fourteenth Amendments)

* Defendant's refusal denied Plaintiff a meaningful opportunity to be heard in his disability claim, as required under Mathews v. Eldridge, 424 U.S. 319 (1976). This case established the balancing test for procedural due process claims, weighing the private interest, the risk of erroneous deprivation, and the government's interest. Here, Plaintiff's private interest in his Social Security benefits is significant, the risk of an erroneous deprivation is high without supporting medical evidence, and the government's interest in denying access to care is minimal.

* Because of the state-sponsored structure in which Spectrum operates, its refusal functions as a state-level deprivation of a federal process, without any individualized

basis or hearing. This constitutes a violation of Plaintiff's procedural due process rights under the Fourteenth Amendment.

Count III – Declaratory and Injunctive Relief

(28 U.S.C. § 2201)

* A real and ongoing controversy exists between Plaintiff and Spectrum regarding its SSA participation policy, making declaratory relief appropriate under 28 U.S.C. § 2201.

* Plaintiff respectfully requests:

a. A declaration that Spectrum's refusal to allow its medical professionals to complete SSA functionality assessments violates federal law, including 42 U.S.C. § 1983 and the Due Process Clause.

b. An injunction prohibiting Spectrum from enforcing such a policy where a provider is otherwise qualified to give medical opinion evidence.

Count IV – Failure to Respond to Pre-Suit Resolution Attempt

* Plaintiff made a good-faith attempt to avoid litigation by contacting Defendant and offering a dialogue regarding the unlawful policy. The Court should consider this failure to respond as evidence of the Defendant's knowing and willful disregard for Plaintiff's rights.

* Defendant failed to respond, demonstrating a willful disregard for patient rights and a closed administrative structure that invites judicial intervention.

Case 3:25-cv-00819-MTL   Document 13   Filed 09/30/25   Page 7 of 13

# VI. STATE ACTION: DEFENDANT'S CONDUCT UNDER COLOR OF LAW

1. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

2. A cause of action under 42 U.S.C. § 1983 requires that the deprivation of a constitutional or statutory right be committed by a person or entity acting "under color of state law." Defendant Spectrum Healthcare Group, Inc. must be deemed a state actor under this standard.

3. Spectrum is not an ordinary private healthcare provider. It contracts directly with the Arizona Health Care Cost Containment System (AHCCCS), the state-administered Medicaid program, to provide behavioral health services to indigent residents of Northern Arizona. Through this contract, Spectrum functions as the exclusive or primary point of access for Medicaid-funded behavioral health treatment in Yavapai County and surrounding regions. For many patients, including Plaintiff, Spectrum is the only affordable or geographically accessible option for treatment.

4. Courts recognize multiple doctrinal bases under which private conduct may constitute state action:

    a. **Public Function Test** — when a private entity performs a function that is

traditionally and exclusively a prerogative of the state (*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).

b. **State Compulsion / Coercion Test** — when the state has exercised coercive power or provided significant encouragement for the challenged conduct (*Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

c. **Symbiotic Relationship / Nexus Test** — when the state and private actor are entwined in such a way that the conduct is fairly attributable to the state (*Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724–26 (1961)).

5. Defendant's conduct satisfies each of these tests.

6. **Public Function.** The state, through AHCCCS, has a statutory obligation to provide medical care to Medicaid-eligible residents. By contracting with AHCCCS to deliver this care, Spectrum has assumed the state's public function. The Supreme Court has held that private physicians providing medical services under a state contract act under color of law because they fulfill the government's constitutional or statutory obligations. *West v. Atkins*, 487 U.S. 42, 54–57 (1988). Spectrum's refusal to complete SSA functionality forms is therefore the act of a state actor obstructing federally protected rights.

7. **State Compulsion / Coercion.** Plaintiff and similarly situated patients are directed into Spectrum's care by virtue of AHCCCS enrollment. Spectrum does not exist in

a free market relationship with patients; instead, it operates as a gatekeeper under the state's Medicaid system. By structuring the healthcare system such that Medicaid beneficiaries in Northern Arizona must rely on Spectrum, the state has effectively compelled patients to be subject to Spectrum's internal policies. The challenged conduct — refusal to complete SSA-required reports — is inseparable from the coercive environment created by the state's delegation of public duties.

8. **Symbiotic Relationship.** Spectrum's financial and operational survival depends on its AHCCCS contract. Like the restaurant in *Burton v. Wilmington Parking Authority*, Spectrum is entwined in a mutually beneficial relationship with the state: the state discharges its statutory obligations through Spectrum, and Spectrum derives nearly all revenue from public funds. This interdependence renders Spectrum's administrative policy "fairly attributable" to the state.

9. The facts here are distinguishable from *Blum v. Yaretsky*, where the Supreme Court declined to find state action because the challenged decisions were individualized medical judgments by private nursing homes. In contrast, Spectrum's policy is not a clinical determination but a blanket administrative rule categorically prohibiting providers from participating in SSA disability evaluations. This is state-linked obstruction of a federal process, not a private exercise of medical discretion.

10. Furthermore, Defendant's refusal directly interferes with Plaintiff's ability to exercise a federally protected property right. Social Security benefits are recognized as a statutory entitlement protected by the Due Process Clause. *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *Richardson v. Belcher*, 404 U.S. 78, 80–81 (1971). By preventing the submission of functional medical evidence required by SSA regulations, Spectrum materially increases the risk of erroneous deprivation of this property interest. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), such deprivation constitutes a violation of procedural due process.

11. Spectrum's role as a state-contracted Medicaid provider, its monopolistic position in Northern Arizona, its financial entwinement with AHCCCS, and its adoption of a blanket gag rule that obstructs federal disability rights all render its conduct "under color of law" within the meaning of § 1983.

12. Accordingly, Spectrum must be treated as a state actor for purposes of liability under 42 U.S.C. § 1983.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

* Declare that Spectrum's policy violates Plaintiff's rights under federal law and the Constitution;

* Enter a permanent injunction requiring Spectrum to allow licensed treating providers to complete SSA functionality forms where appropriate;

* Award compensatory damages for any impairment to Plaintiff's ability to prove his claim or delays suffered;

* Award punitive damages due to deliberate indifference and systemic harm;

* Award Plaintiff his costs and reasonable attorney's fees under 42 U.S.C. § 1988, which permits the award of fees to a prevailing party in a civil rights action;

* Grant any other relief the Court deems just and proper.

Respectfully submitted,

Daniel T. Doria
Plaintiff, Pro Se

Case 3:25-cv-08122-MTL    Document 131    Filed 09/30/25    Page 13 of 13

David Dorin
989 S Main St. Ste IA PMB 407
Cottonwood, AZ 86326

U.S. POSTAGE PAID
FCM LG ENV
COTTONWOOD, AZ 86326
SEP 08, 2025
$2.44
S2322H500605-12

Retail



85003
RDC 99

Clerk
401 W. Washington St.
Phoenix, AZ 85003

RECEIVED
SEP 1 0 2025
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA